Official Form 417A (12/23)

## UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF WASHINGTON

In re: Eric Young and Susan Young, Debtors

Case No.: 25-01029-FPC7
Chapter 7

Linda Cole and Ted Cole, Plaintiffs
v.
Eric Young and Susan Young, Defendants

ADVERSARY NO. 25-80038-FPC

# NOTICE OF APPEAL AND STATEMENT OF ELECTION

## Part 1: Identify the appellant(s)

1.  Name(s) of appellant(s):  ERIC R. YOUNG and SUSAN L. YOUNG

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ❏ Plaintiff | |
| ☒ Defendant | ❏ Debtor |
| ❏ Other (describe) _____ | ❏ Creditor |
| | ❏ Trustee |
| | ❏ Other (describe) _____ |

## Part 2:  Identify the subject of this appeal

1.  Describe the judgment—or the appealable order or decree—from which the appeal is taken:

    **Order Granting Plaintiffs' MSJ and Order Denying Defendants' Rule 9023 Motion**

2.  State the date on which the judgment—or the appealable order or decree—was entered:

Doc. 44 - MSJ Opinion: 1/27/2026  //  Doc. 50-Order Denying Defendants Rule 9023 Motion: 2/12/2026

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.  Party:  Plaintiffs:  Linda Cole and Ted Cole

    Attorney:  Matthew Mensik - (206) 949-3540
    RIVERSIDE NW LAW GROUP, PLLC
    601 W. Riverside Ave, STE 810
    Spokane, WA 99201

2.  Party:  Defendants Pro Se:
    Eric Young and Susan Young

    Attorney:  Defendants Pro Se:
    Eric Young and Susan Young
    12402 N Division St #167
    Spokane, WA 99218
    936-463-8411

Official Form 417A          Notice of Appeal and Statement of Election          page 1

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

       ❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

_____    Date: _2/26/2026_

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

ERIC AND SUSAN YOUNG - Defendants Pro Se

12402 N Division St #167 :: Spokane, WA 99218

PHONE (936-463-8411)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[Note to inmate filers: If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# NOTICE OF APPEAL EXHIBIT - A

# 25-80038 DOC 44

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**So Ordered.**

**Dated: January 27th, 2026**



Frederick P. Corbit
Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE:<br><br>ERIC ROSS YOUNG and SUSAN LINETTE YOUNG,<br><br>                        Debtors. | Case No. 25-01029-FPC |
| TED COLE and LINDA COLE,<br><br>                      Plaintiffs,<br><br>v.<br><br>ERIC ROSS YOUNG and SUSAN LINETTE YOUNG,<br><br>                    Defendants. | Adversary No. 25-80038-FPC<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

### 1. INTRODUCTION

THIS MATTER came before the Court on cross-motions for summary judgment. Plaintiffs Ted and Linda Cole filed a Motion for Summary Judgment on December 1, 2025 ("the Coles' Motion") (Adv. ECF[1] No. 9). On the same day, Debtor/Defendants Eric and Susan Young filed a pro se Motion for Summary Judgment ("the Youngs' Motion") (Adv. ECF No. 17). The Youngs subsequently

---

[1] "Adv. ECF" refers to the docket of this case, Adversary No. 25-80038-FPC. "ECF" refers to the docket of the main bankruptcy case, Case No. 25-01029-FPC7.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 1

filed several supporting documents. (ECF Nos. 26-31; 33-36; 40-41) The Court heard argument on December 30, 2025 and took the matter under advisement. Appearing at the oral argument were pro se Debtors Eric and Susan Young, and Matthew Mensik, attorney for Ted and Linda Cole. (Adv. ECF No. 43)

The parties in this case are related: Linda Cole is Susan Young's mother and Ted Cole is Susan Young's stepfather. In 2023, the parties decided to purchase a house so they could all live together, but the plan fell apart and litigation ensued in Spokane County Superior Court, Case No. 23-2-04734-32 ("the State Court"). The parties participated in a four-day bench trial. The trial included testimony from Linda Cole, Eric Young, Susan Young, a forensic accountant, a notary public and a real estate agent.

After the trial concluded, the State Court issued 213 detailed findings of fact and conclusions of law. The State Court found that the Coles provided the funds for a downpayment and Mr. Young, despite being directed to use the funds as a downpayment on the home, secretly directed the bank to deposit the Coles' funds into his personal bank account. The State Court ultimately found that the Youngs had converted the Coles' money. The State Court also found that the Youngs used some of the Coles' money to purchase a recreational vehicle. The State Court ultimately ordered the Youngs to transfer title in the recreational vehicle to the Coles and to pay certain amounts of money to the Coles.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 2

After the State Court's rulings, the Youngs petitioned for bankruptcy. In response, the Coles filed this adversary action, requesting this Court find the Youngs' debt to the Coles nondischargeable.

On summary judgment, the Coles argue that collateral estoppel applies, and the State Court's findings and conclusions establish the debt owed to the Coles is nondischargeable. This Court finds application of collateral estoppel is appropriate.

The Youngs argue that a variety of legal principles apply and generally disagree that collateral estoppel is applicable. The Youngs' summary judgment motion fails to raise colorable, material factual disputes or cognizable legal arguments, and thus is denied.

## 2. THE STATE COURT PROCEEDINGS

In the State Court lawsuit, the Coles alleged that the Youngs wrongfully obtained $362,012.66 from the Coles' bank accounts, and the Coles requested the State Court grant both monetary and injunctive relief. After a bench trial, the State Court entered detailed findings of fact and conclusions of law.[2] The substantive facts set forth below are from the State Court's findings and conclusions.

### 2.1 Attempts to Buy a Family Home

---

[2] The State Court findings and conclusions were filed on this Court's docket in the adversary at Adv. ECF No. 11, pp. 47-73. "FF" refers to the findings and conclusions of the State Court.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 3

Linda Cole is Debtor Susan Young's mother, and at the time of the State Court proceeding, Mr. and Ms. Coles were 83 and 80 years old, respectively. (FF 1; 3) On October 7, 2023, the parties agreed to purchase a home for both families to live in together. (FF 45) Ms. Cole understood the agreement was that both families would be on the title and mortgage for the home. (FF 46) The Coles agreed to provide $180,000 as a downpayment. (FF 54-58) The two couples found a home in Spokane they both liked, and they decided the Coles would live upstairs and the Youngs would live downstairs. (FF 52-53)

### 2.2 Secret Increase of Gift Letter Amount.

Eric Young presented Ms. Cole with a "gift letter" related to the downpayment on the house. He told her that the downpayment was $180,000 and the gift letter was necessary because the money was being transferred across state lines. (FF 54-55) Ms. Cole testified that instead of a letter, Mr. Young presented her with a blank piece of paper that she believed would become the gift letter for $180,000, so she signed it. (FF 56) The actual downpayment needed for the house they selected was $123,000. (FF 64)

On October 12, 2023, Mr. Young initiated a call to the Coles' bank, Old West Bank, seeking to have $180,000 transferred from the Coles' account. (FF 58) The Old West Bank Branch in Baker City, Oregon, refused to conduct the transfer

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 4

as requested by Mr. Young because the bank manager was out of town and because Ms. Cole was not present. (FF 60)

Ms. Cole was frustrated that her bank would not transfer the funds. In response, Ms. Cole planned to withdraw all of her money from Old West Bank and transfer it to her Chase Bank account. (FF 61) Ms. Cole said she wanted her and Mr. Young to both be able to access the funds in Spokane. (FF 61)

Once Ms. Cole decided to move all her money out of the Old West Bank, Mr. Young secretly changed the amount on the gift letter from $180,000.00 to $242,314.62 without Ms. Cole's knowledge. (FF 62)

### 2.3 Mr. Young Affixed Ms. Cole's Signature

Mr. Young did not give up on transferring the Coles' money from Old West Bank. He continued calling other Old West Bank branches to see if any employees would be willing to complete the wire transfer without Ms. Cole present. (FF 65) Ultimately, Mr. Young found an employee at the La Grande, Oregon branch who was willing to transfer the Coles' money. (FF 66)

Once Mr. Young found an employee willing to complete the transfer, he called Ms. Cole. (FF 67) Ms. Cole provided her Chase bank account number to Mr. Young so he could complete the transfer of her money from her Old West Bank account to her Chase account. (FF 68)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 5

After the phone conversation, the bank employee emailed Ms. Cole three forms necessary for the wire transfer: (1) a three-page form for a property purchase wire transfer; (2) a three-page form for a bank balance wire transfer; and (3) a share membership disclosure. (FF 69-71) The forms revealed that two wire transfers were planned: first, a property purchase transfer of $242,314.62 ("Property Purchase Transfer"), and second, a balance transfer of $119,698.04 ("Balance Transfer"), for a total of $362,012.66. (FF 72; 75) Both documents transferred Ms. Cole's funds, not to Chase, but to Mr. Young's personal account. Both transfers required Ms. Cole's signature in two places: on the first and third pages for each transfer.

### 2.4 Account Balance and Property Purchase Transfer Documents

Page one of the Balance Transfer form listed $119,698.04 as the amount to be withdrawn, with Mr. Young as the beneficiary. Page one also included instructions to wire the funds to Mr. Young's personal account, a Bank of America account ending in 2131. (FF 72) The same page had a line for Ms. Cole's signature. The second page included boilerplate disclosure language, and the third page contained wire instructions, indemnification and hold harmless agreements, and a second signature line for Ms. Cole. (FF 73-74)

Page one of the Property Purchase Transfer revealed the transfer amount was $242,314.62 from the Coles' account "for property purchase in Spokane, WA."

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 6

(FF 75) This page listed Mr. Young as the beneficiary and directed the funds to be deposited into Mr. Young's personal account, a Bank of America account ending in 2131. (FF 75) The same page had a signature line for Ms. Cole. (FF 75) The second page included boilerplate disclosure, and the third page contained wire instructions, indemnification and hold harmless agreements, and a second signature line for Ms. Cole. (FF 76-77)

Mr. Young admitted that he had access to the Coles' email inbox. (FF 80) Mr. Young testified that Ms. Cole forwarded the Old West Bank email with the attached forms to him, but Ms. Cole denied this and testified that she never saw the email. (FF 79)

At trial, the credible evidence failed to establish that Ms. Cole signed both pages of the transfer documents. Rather, the evidence and testimony established that the only pages Ms. Cole signed in front of a notary were the third pages from each wire transfer document. (FF 83-85) In other words, the notary did not witness Ms. Cole sign the first page—the page authorizing the transfer of the Coles' money to Mr. Young's personal bank account. Furthermore, Ms. Cole denied signing the first page of either wire transfer document. (FF 89) At trial, Ms. Cole testified that she never intended to give Mr. Young $180,000 but instead intended to pay the downpayment directly from her bank account. (FF 179)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 7

The State Court found that "more likely than not, Mr. Young affixed Ms. Cole's electronic signature to the wire transfer forms." (FF 198) The State Court also found that more likely than not, Ms. Cole never saw all the pages associated with the two wire transfers, and thus never saw or signed the pages transferring her money to Mr. Young's personal account. (FF 199)

### 2.5    The Youngs' Trial Testimony Was Not Credible.

At trial, Mr. Young claimed that he noticed the wire transfers directed the money to be deposited into his account—instead of the Coles' Chase Bank account—for the first time on October 13, 2023. (FF 81) He testified that he told Ms. Cole about "the mix up" on October 14, 2023. (FF 82)[3] This was inconsistent with the testimony of Ms. Cole and Ms. Young; both testified that Ms. Young told her mother on October 16, 2023, that the Coles' money had been transferred to Mr. Young's account. (FF 92) Ms. Cole testified that when her daughter gave her this news, she "knew at that time that we had been taken then and there." (FF 93) That same day, Ms. Cole went to the police station and reported that Mr. Young had impersonated her and taken her money. (FF 94)

At trial, Mr. Young provided contradictory testimony about the two transfers. (FF 165) For the Property Purchase Transfer, Mr. Young acknowledged

---

[3] The State Court ultimately found Mr. Young's assertion was inconsistent with other witnesses' credible testimony. (FF 200)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 8

the amount deposited into his account was $62,334.62 more than the $180,000, the amount agreed to by Ms. Cole. (FF 166) Mr. Young claimed the additional $62,334.62 was earmarked for remodeling the basement of the home, as well as for fixing the Coles' Oregon home they were selling. (FF 167) But Mr. Young also testified that the full Property Purchase Transfer of $242,334.62 was a gift from the Coles to the Youngs. (FF 168) For the Balance Transfer, Mr. Young admitted that the $119,698.04 deposit was not a gift. (FF 166)

Ms. Young testified that although the $119,718.04 was not a gift from the Coles, her mother "allowed the transfer so the Youngs could pay for any of Mr. and Ms. Cole's needs or wants." However, the only "needs" of the Coles that Ms. Young said she used the money for was to purchase one pair of gloves for Mr. Cole. (FF 170)

The State Court found that "[t]estimony from Mr. and Ms. Young was often contradictory, evasive, and argumentative" and "not credible." (FF 186) The State Court also made a finding that both Mr. Young's and Ms. Young's testimony was "implausible and conflicting." (FF 196)

### 2.6    The Coles' Demand Return of the Money.

The total amount of funds that were transferred from the Coles' account to Mr. Young's account was $362,012.66. Mr. Young then moved the transferred

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 9

funds between his personal accounts. (FF 98) The Coles demanded the Youngs return the money both in writing and in person, multiple times. (FF 122-126)

Instead of returning the money, Mr. Young continued to move the money between his bank accounts and spent a significant amount of the money. (FF 128-129)

The two couples met twice shortly after the transfers to discuss return of the Coles' money. The meetings were secretly recorded by the parties. (FF 104; 107) The State Court found that in these meetings the Youngs engaged in "extraordinarily manipulative tactics," including emotional manipulation using as leverage their shared religion, the Coles' only grandchild, and care for the Coles as they age. (FF 103-111) The State Court also found that in these meetings Mr. Young engaged in a variety of aggressive and condescending tactics toward the Coles. (FF 112-118)

### 2.7    Mr. Young's Mortgage Application was Denied.

On October 18, 2023 Mr. Young wired $6,000 to a title company as earnest money for the home purchase. (FF 100) The next day, Mr. Young submitted a mortgage application and listed $242,314.62 as a gift from a relative. (FF 101)

Ms. Cole discovered that Mr. Young planned to title the house only in the Youngs' names, not the Coles' names. (FF 120) Ms. Cole tried several times unsuccessfully to stop the house purchase. (FF 119-121) Ms. Cole also tried to

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 10

rescind the purchase and sale agreement, but since she was not a party to the contract, she was unsuccessful. (FF 121)

On November 11, 2023, Mr. Young's mortgage application was denied based on his low credit score, serious delinquency of accounts, the proportion of high credit balances on revolving accounts, and the number of accounts that were delinquent. (FF 140)

### 2.8 State Court Order

On November 7, 2023, the Coles filed a lawsuit against the Youngs in the State Court, alleging conversion and fraud. (FF 130) At an emergency hearing that day, Mr. Young admitted he had used about $82,000.00 of the Coles' money to reduce his personal debt. (FF 133) He also testified the Coles money was in his Fidelity account, so the State Court ordered that account frozen. (FF 131-132)

On February 2, 2024, the State Court entered a preliminary injunction and ordered the Youngs to move the money into the Coles' attorney's trust account and to provide an accounting of all the Coles' money spent by February 6, 2024. (FF 143) The Youngs did not comply. (FF 145)

On February 14, 2024, the Youngs partially complied with the State Court order to return the Balance Transfer funds and sent the Coles a cashier's check for $119,698.04. (FF 146) However, on February 20, 2024, the State Court found the Youngs in contempt because they failed to move all the Coles' remaining money

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 11

into their attorney's trust account and failed to provide an accounting. (FF 146) At a hearing two days later, the Youngs admitted that the previous week they spent $82,799.20 of the Coles' money to purchase a recreational vehicle. (FF 147) At a hearing the following day, the Youngs admitted to spending an additional $7,449.00 for an RV warranty package, and to spending $8,000 on motorcycles.

Because the Youngs continued to ignore the State Court's orders to provide an accounting and deposit the remaining funds into the lawyer's trust account, the State Court issued a civil bench warrant for Mr. Young. (FF 151) At subsequent court hearings, the Youngs failed to provide a full accounting of the Coles' money they spent. (FF 147; 150; 153-159) Altogether, the Youngs spent $218,334.62 of the Coles' money. (FF 160) At the time of trial, $24,000 remained in cash, and the Youngs possessed the recreational vehicle originally purchased for $82,799.20. (FF 160).

### 2.9 Conversion Finding in State Court

The State Court defined conversion as: "Conversion, or civil theft, occurs when someone willfully interferes with another's property by either taking the property or unlawfully retaining the property, therefore depriving the owner of its possession." *Citing Burton v. City of Spokane*, 16 Wn. App.2d 769, 773, 482 P.3d 968 (2021). (FF 201)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 12

The State Court concluded that the Coles proved the Youngs committed conversion: "the Coles have shown that, more likely than not, the Youngs took and retained $242,314.62 and deprived them of the use and possession of it. The Youngs provided no evidence to the contrary." (FF 204) Additionally, the State Court found it was "undisputed that $119,698.04 was never supposed to be transferred into Mr. Young's account and even though the Youngs acknowledge this, they refused to return the funds until February 14, 2024." (FF 208) The State Court concluded: "Mr. and Ms. Cole have been deprived of the use and possession of their money." (FF 209)

### 2.10   State Court Judgment

The State Court awarded the Coles: (i) $24,000 located in the Young's attorney's trust account; (ii) title to the recreational vehicle recently purchased by the Youngs with the Coles' money; and (iii) a judgment of $129,515.42, plus prejudgment and post-judgment interest on certain amounts. (Adv. ECF No. 11 at p. 72)

### 3.  PROCEDURAL HISTORY OF THE BANKRUPTCY CASE

On June 9, 2025, Eric and Susan Young petitioned for bankruptcy protection. (ECF No. 1)

On September 15, 2025, the Coles filed this adversary action against the Youngs under 11 U.S.C. § 523(a), alleging the Youngs' debt to them was

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 13

nondischargeable. (Adv. ECF No. 1) Specifically, the complaint alleged the debt owed to the Coles was nondischargeable because the debt was incurred as a result of: (i) Debtors' false pretenses, false representations, and actual fraud under § 523(a)(2)(A); (ii) Debtors' embezzlement or larceny under § 523(a)(4); or (iii) Debtors' willful and malicious injury under § 523(a)(6).

Both parties filed cross-motions for summary judgment. The Coles argue that collateral estoppel applies, and all the issues presented in this Court were fully adjudicated in the State Court. As a result, the Coles argue that the State Court's findings and conclusions establish a sufficient basis for this Court to determine that the Youngs' debt is non-dischargeable. Specifically, the Coles argue that summary judgment should be granted because the trial court's findings support the application of two discharge exception provisions: 11 U.S.C. §§ 523(a)(4) and (6).

The Youngs' motion for summary judgment includes multiple pleadings. The Youngs offer wide-ranging reasons why they are entitled to summary judgment, but the Youngs' arguments are not persuasive.

### 4. LEGAL ANALYSIS

#### 4.1 Summary Judgment Standard

Summary judgment is properly granted when no genuine issues of disputed material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 14

(made applicable in adversary proceedings by Rule 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" only where a sufficient evidentiary basis exists on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only where the dispute could affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Id.* at 256–57.

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing the existence of a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

A court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### 4.2    Bankruptcy Discharge Exceptions

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 15

Generally, debts that arose before the date of the bankruptcy petition are dischargeable. 11 U.S.C. § 727(b). However, certain types of debts are excepted from the discharge. *See* 11 U.S.C. § 523. The Coles argue they are entitled to summary judgment because the State Court findings establish the debt owed to them is nondischargeable under two separate provisions: (i) 11 U.S.C. § 523(a)(4) which excepts debts incurred as a result of fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; and (ii) 11 U.S.C. § 523(a)(6) which excepts debts incurred as a result of willful and malicious injury by the debtor.

The burden is on the creditor to establish by a preponderance of the evidence each element of the exception to dischargeability. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In other words, despite "the Bankruptcy Code's policy bias in favor of the debtor's discharge, a party seeking to except an obligation from discharge under § 523(a) will prevail if the evidence establishes that it is more likely than not that the creditor's cause of action is justified." *Vans Inc. v. Rosendahl (In re Rosendahl)*, 307 B.R. 199, 214 (Bankr. D. Or. 2004) (citations omitted).

### 4.3 Collateral Estoppel

The Coles argue that summary judgment should be granted because collateral estoppel applies since all the issues presented in this case were fully adjudicated in the State Court. Specifically, the Coles argue that summary

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT -** Page 16

judgment should be granted because the trial court's findings support the application of two discharge exception provisions: 11 U.S.C. §§ 523(a)(4) and (6).

Generally, collateral estoppel bars relitigation of an issue previously decided in a prior judicial proceeding if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in the earlier case. *Allen v. McCurry*, 449 U.S. 90, 95 (1980). Collateral estoppel principles apply in bankruptcy discharge exception proceedings pursuant to 11 U.S.C. § 523(a). *Grogan*, 498 U.S. at 284–85 n.10.

In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the state's law of collateral estoppel. *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir. 1994), citing 28 U.S.C. § 1738; *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82 (1982). Courts have "broad discretion" in determining when to apply issue preclusion. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

In Washington, a party asserting collateral estoppel applies must establish four elements: (1) the issue decided in the prior adjudication is identical with the issue presented in the second action; (2) the prior adjudication ended in a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or was in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice. *In re Est. of Hambleton*, 181 Wash. 2d

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 17

802, 834, 335 P.3d 398, 415 (2014); *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash.2d 255, 262–63, 956 P.2d 312 (1998). Washington courts consider collateral estoppel "an equitable doctrine that will not be applied mechanically to work an injustice." *Hadley v. Maxwell*, 144 Wash. 2d 306, 315, 27 P.3d 600 (2001).

Therefore, to prevail on summary judgment, the Coles must establish: (1) the issue litigated in State Court was identical to the issues presented in the adversary proceeding; (2) the State Court proceeding ended with a judgment on the merits; (3) the Youngs were a party to the State Court action; and (4) applying collateral estoppel will not be unjust.

The Youngs argue that two of the four collateral estoppel factors are not met and therefore the Coles' summary judgment motion should be denied. First, the Youngs argue the trial court's decision was not a final judgment on the merits. Second, they argue that the state court's definition of conversion is not identical to the exception from discharge elements under 11 U.S.C. § 523(a)(4) and (6).[4]

The Youngs do not challenge the existence of the remaining two factors necessary to applying collateral estoppel. As a result, the Court concludes no dispute exists that the Youngs were a party to the State Court action and

---

[4] Because the Youngs raised this issue at oral argument, the Court addresses the contentions herein.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 18

application of collateral estoppel will not work an injustice because the Youngs fully participated in the State Court trial. Thus, this Court decides two issues to determine whether collateral estoppel applies to this proceeding: (i) whether the State Court's order was a final judgment on the merits; and (ii) whether the issues litigated in State Court are identical to the issues presented in the adversary complaint.

### 4.3.1  Collateral estoppel requires a final judgment on the merits

This Court addresses the finality issue first because the analysis is straightforward. The Youngs contend the State Court's decision was not a final judgment on the merits. The Youngs point to the differing use of the word "judgment" in the State Court's order. The State Court order concludes with a list of items the Youngs must provide to the Coles, including dollar amounts, interest, and personal property. The final two sentences of the State Court's order states: "[t]his judgment is to be paid within 30 days. If not paid, it may be reduced to a judgment without notice to Mr. and Ms. Young." (Adv. ECF No. 1, Appx A).

While the State Court's use of the term "judgment" in different sentences is confusing, the differing use does not negate the finality of the decision. For collateral estoppel purposes, a final decision need not possess "finality" in the sense of 28 U.S.C. § 1291 (addressing finality required before decision ripe for appeal). "A 'final judgment' for purposes of collateral estoppel can be any prior

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 19

adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983), quoting Restatement (Second) of Judgments § 13, comment "g" (1982) (factors relevant to the determination of finality include whether the decision was "was avowedly tentative" as opposed to a reasoned court decision, subject to appeal). For example, a trial court's order that determined a certain sum would fully compensate a plaintiff's injuries was considered a final judgment on the merits for purposes of applying the doctrine of collateral estoppel in Washington. *Nielson By & Through Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash. 2d 255, 264, 956 P.2d 312, 316 (1998).

The State Court's different use of the word "judgment" is ultimately immaterial to the determination of whether the findings and conclusions constitute a final judgment on the merits. In this case, the decision was issued after a trial, where the issues were fully litigated by both parties. The State Court's order addressed and decided all legal issues. As a result, the State Court's order was a final judgment on the merits for purposes of applying the doctrine of collateral estoppel.

### 4.3.2 Application of collateral estoppel requires identical, determinative issues

The second reason the Youngs contend collateral estoppel cannot be applied is because the elements of "conversion" under Washington common law are not

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 20

identical to the elements required to prove a debt is exempt from discharge under 11 U.S.C. § 523(a)(4) and (6). For this prong, courts examine whether "the identical, determinative issues were in fact litigated in the prior proceeding." *Miller v. Apfel–Wilson (In re Apfel–Wilson)*, 165 B.R. 939, 940 (Bankr. W.D. Wash. 1994).

The "identical issues" prong of collateral estoppel in Washington consists of a three-part test determining whether: (1) the issues are identical; (2) the issues were actually litigated in the prior proceeding; and (3) the issues were necessary to the previous court's decision. *In re Bigelow*, 271 B.R. 178, 183–84 (B.A.P. 9th Cir. 2001); *see Henderson v. Bardahl Int'l Corp.*, 72 Wash.2d 109, 118, 431 P.2d 961, 967 (1967). As such, this Court must compare the issues litigated in State Court with the elements necessary to establish nondischargeability. *See Kaplan v. Renewable Resources Coalition, Inc. (In re Kaplan)*, 2016 WL 7189820, slip op. at *15 (9th Cir. B.A.P. 2016) (Collateral estoppel "identical issue' requirement "addresses whether identical factual allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same").

The State Court found that the Youngs committed conversion, or civil theft, against the Coles. On summary judgment, the Coles claim the State Court's findings and conclusions supporting conversion also establish: (i) the Youngs committed embezzlement or larceny under § 523(a)(4), and (ii) the Youngs'

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 21

conduct was "willful and malicious" under §523(a)(6). This Court agrees. As a result, this Court applies the doctrine of collateral estoppel to preclude relitigation of those issues.

### 4.3.3  11 U.S.C. § 523(a)(4) excepts from discharge debts that resulted from embezzlement or larceny.

Debts incurred as the result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are nondischargeable under 11 U.S.C. § 523(a)(4). In this case, the Coles argue that the State Court findings establish that the Youngs' conduct meets both the definition of embezzlement and larceny.

### 4.3.4  Larceny under 11 U.S.C. § 523(a)(4)

A bankruptcy court is not bound by the state law definition of larceny. *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir. 2010). Instead, the bankruptcy court may follow federal common law, which defines larceny as the "felonious[5] taking of another's personal property with intent to convert it or deprive the owner of the same." *Id.* (quoting 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev. 2008)). Fraudulent intent is not necessary to prove larceny. *Ormsby,* 591 F.3d at 1205. Instead, Ninth Circuit courts determine intent from the circumstances: "[i]ntent

---

[5] In the context of larceny, "felonious" is defined as "'proceeding from an evil heart or purpose; malicious; villainous ... Wrongful; (of an act) done without excuse of color of right.'" *In Re Ormsby*, 591 F.3d at 1205 (quoting *Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008)).

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 22

may properly be inferred from the totality of the circumstances and the conduct of the person accused." *Ormsby*, 591 F.3d at 1205, *quoting Kaye v. Rose (In re Rose)*, 934 F.2d 901, 904 (7th Cir.1991).

The major distinction that separates larceny from embezzlement is that the "the original taking of the property must be unlawful." *In re Jenkins*, 2015 WL 735799, at *5 (B.A.P. 9th Cir. Feb. 20, 2015) citing *Werner v. Hoffman*, 5 F.3d 1170, 1172 (8th Cir.1993); *In re Rose*, 934 F.2d at 904. In other words, the initial possession of the property by the debtor/defendant must be wrongful. *See In re Woodman*, 451 B.R. 31, 38 (Bankr. D. Idaho 2011).

In this case, the State Court findings establish that the Youngs' conversion of the Coles money constitutes larceny under 11 U.S.C. § 523(a)(4). The State Court findings that establish the wrongful taking include:

- Mr. Young secretly increased the gift letter amount after Ms. Young informed him of the Coles' bank balances[6] (FF 62);
- Mr. Young secretly provided his personal bank account number as the destination for the Coles two wire transfers (FF 72; 75);
- Mr. Young secretly affixed Ms. Cole's signature to the first page of the two wire transfer documents and hid the first pages from her so she would not see that he directed the transfers to be deposited into his bank account (FF 198; 199)'
- Mr. and Ms. Young used extraordinarily manipulative and aggressive tactics against the Coles when the Coles demanded return of their money (FF 103-118);

---

[6] Ms. Young learned the amount of money in her parents' bank accounts at Old West. (FF 43) She reported to Mr. Young in a text: Saving Checking: $20,373.28; Saver Savings $242,309.79; Money Market $99,317.49 and Primary share $22.78, for a total of $362,023.34. (FF 44)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 23

- Mr. Young repeatedly moved the Coles' money between his personal accounts (FF 98; 128; 129);
- The Youngs spent a significant portion of the Coles' money and refused to return the money despite repeated requests from the Coles (FF 208); and
- Ms. Cole never intended for any of the Coles' money to be transferred to Mr. Young's personal bank accounts (FF 179).

The State Court found that the Youngs "took and retained $242,314.62"—the Property Purchase Transfer—and deprived the Coles "of the use and possession of it." (FF 204) Additionally, the State Court found it was undisputed "that $119,698.04"—the Balance Transfer—"was never supposed to be transferred into Mr. Young's account and even though the Youngs acknowledge[d] this, they refused to return the funds" until well after the State Court ordered the funds returned. (FF 208) The State Court findings establish the Youngs engaged in a wrongful taking, with the requisite intent to deprive the Coles of their personal property.

In sum, in this case, both the State Court conversion claim and the nondischargeability larceny claim involve the same factual allegations: the Youngs misappropriated money belonging to the Coles and they retained and spent the money for their own personal expenses. Therefore, the State Court's factual findings establish that the Youngs committed larceny under 11 U.S.C. § 523(a)(4).

The remaining two elements of the "identical issues" test are also met. A comparison of the issues litigated in State Court with the issues related to nondischargeability reveal the issues were substantially identical and necessary to

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 24

the State Court's decision. The Youngs' conduct was at issue, and the State Court listened to testimony over several days and assessed the witnesses' credibility. Because the issues necessary to determine nondischargeability were actually litigated in State Court, and because those issues were necessary to the State Court's decision, the final two elements of "identical issues" are met. As a result, no material issue of fact exists, and the Youngs' debt is nondischargeable under 11 U.S.C. § 523(a)(4).

### 4.3.5 Embezzlement under 11 U.S.C. § 523(a)(4)[7]

The State Court's findings also establish that the Youngs' conduct constitutes embezzlement under 11 U.S.C. § 523(a)(4). Federal law controls the definition of embezzlement for purposes of section 523(a)(4). *In re Wada*, 210 B.R. 572, 576 (B.A.P. 9th Cir. 1997). Under long-standing federal law, embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been [e]ntrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895).

In the context of section 523(a)(4), embezzlement consists of three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than which it was entrusted, and (3)

---

[7] 11 U.S.C. § 523(a)(4) separates larceny and embezzlement by the disjunctive "or." As a result, two independent grounds exist under §523(a)(4) to conclude the Youngs' debt to the Coles is nondischargeable.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 25

circumstances indicating fraud. *In re Wada*, 210 B.R. at 576, citing *Transamerica Commercial Finance Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991). In this case, the State Court's findings support all three elements necessary to establish embezzlement.

First, this Court examines whether some of the Coles' money was rightfully in the possession of the Youngs. In 2023 both the Coles and the Youngs agreed to buy a home for both families to live in together. The parties both agreed the Coles would fund the downpayment in the amount of $180,000. The Coles intended to pay $180,000 as a downpayment, and Mr. Young's temporary possession of the funds prior to making the downpayment could be deemed constructively authorized. Because the Coles agreed to fund $180,000 as the downpayment, the first element of embezzlement is met related to the Property Purchase Transfer.

The second element necessary to find embezzlement, the nonowner's appropriation of the property to a use other than which it was entrusted, is also supported by the State Court findings. Specifically, the State Court's findings established that the Youngs appropriated the Coles' money and used it for purposes other than what was intended–the downpayment. These findings include:

- Mr. Young testified he had spent about $82,000.00 of the money to pay down his debt to qualify for the mortgage. (FF 133)
- The Youngs admitted to purchasing an RV for $82,799.20 on February 14, 2024. (FF 147)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 26

- The Youngs admitted to spending an additional $7,449.00 for a warranty package on the RV as well as approximately $8,000.00 on motorcycles. (FF 150)

Because the State Court's finding reveal that the Youngs spent the funds intended to serve as a downpayment for other purposes the second element of embezzlement is met.

The third element necessary to find embezzlement is supported by the State Court findings: circumstances exist indicating the Youngs engaged in fraud. The Youngs argue that because the State Court found the Coles had not established fraud, this element is not met:

> Having already told this Court there was no actionable fraud under Washington's standard and state court's Findings order ¶¶ 210-13, Plaintiffs cannot now, under § 502(b)(1) and the same state-law framework, repackage that same failed theory as an enforceable "fraud debt" in the guise of a § 523(a)(2)(A) claim.

(Adv. ECF No. 36 at p. 13) The Youngs are incorrect; they fail to understand the difference between state common law fraud and the use of "fraud" in the bankruptcy code nondischargeability provisions.

In this case, the State Court properly cited the nine elements of common law fraud in Washington. The State Court found that the Coles failed to establish one of the elements, the Coles did not show the Youngs misrepresented an existing

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 27

fact.[8] (FF 212) However, in the bankruptcy discharge context, fraud is analyzed

differently than common law fraud:

> "[D]ebts created by 'fraud' are associated directly with debts created by 'embezzlement.' Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1878).

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273 (2013) (discussing long-

standing judicial interpretation of term "fraud" in the Bankruptcy Code exceptions

to discharge).

The State Court's findings support this element of embezzlement. Multiple

findings reveal the Youngs engaged in positive fraud and fraud in fact that is

properly characterized as moral turpitude[9] and intentional wrongs. For example,

the findings that support the Youngs' fraudulent conduct includes:

---

[8] This Court does not—and need not—comment on whether the State Court properly applied the elements of common law fraud to these facts.

[9] Courts have consistently defined "moral turpitude" as involving "conduct that is inherently base, vile, or depraved, and contrary to the private and social duties man owes to his fellow men or to society in general." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1068 (9th Cir. 2007), overruled on other grounds by *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011); *see also Padilla v. Gonzales*, 397 F.3d 1016, 1019 (7th Cir.2005) (moral turpitude involves acts that arouses serious indignation in the law-abiding public); *Omagah v. Ashcroft*, 288 F.3d 254, 259–60 (5th Cir.2002) (morally turpitudinous acts are "per se morally reprehensible and intrinsically wrong"); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir.2001) (morally turpitudinous conduct "shocks the public conscience"). Additionally, cour recognize basic notions of moral turpitude involve "immoral or depraved" conduct. *Navarro-Lopez*, 503 F.3d at 1068 (quoting Random House Dictionary of English Usage Unabridged 930 (1973)). Acts of moral turpitude "involv[e] grave infringement of the moral sentiment of the

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 28

- Mr. Young's continuous and multiple acts of deception such as:
  - secretly increasing the gift letter amount (FF 62);
  - secretly providing his personal bank account number as the destination for the Coles two wire transfers (FF 72; 75);
  - intercepting the email from Old West Bank and hiding it from Ms. Cole (FF 80);
  - secretly affixing Ms. Cole's signature to the first page of the two wire transfer documents (FF 198; 199);
  - hiding the first pages of the transfer documents from Ms. Cole (FF 198; 199);
- Both Mr. and Ms. Young's use of "extraordinarily manipulative" and aggressive tactics against the Coles when the Coles demanded return of their money (FF 103-118);
- Both Mr. and Ms. Young spent the Coles' money on a recreational vehicle and motorcyles, even after the State Court ordered the accounts frozen (FF 143-150)

This conduct, in addition to the State Court findings that neither Mr. nor Ms. Young's testimony at trial was credible, establish the element of fraud required to establish embezzlement. (FF 186; 196) In sum, the State Court's findings and conclusions establish that the Youngs's conduct constituted embezzlement under 11 U.S.C. § 523(a)(4), and thus the debt is nondischargeable.

Moreover, the State Court's findings and conclusions related to conversion were identical, litigated and necessary to the State Court's judgment.[10] Because the State Court's findings and conclusions establish the required elements of larceny and embezzlement under 11 U.S.C. § 523(a)(4), the legal prong of collateral

community." *Navarro-Lopez,* 503 F.3d at 1068 (quoting Webster's New International Dictionary Unabridged 1593 (2d ed. 1940)).
[10]The analysis relevant to the "litigated and necessary" prongs under larceny similarly applies to embezzlement. *See infra* p.23.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 29

estoppel is met for both statutory exceptions to discharge. In other words, collateral estoppel applies: the State Court's findings are sufficient to conclusively establish on summary judgment that the Youngs' debt to the Coles is nondischargeable under 11 U.S.C. § 523(a)(4).

### 4.3.6 Willful and malicious injury under 11 U.S.C. § 523(a)(6)

Finally, the State Court's findings support a third, independent basis for finding the Youngs' debt to the Coles is nondischargeable pursuant to 11 U.S.C. § 523(a)(6): the Youngs' conduct caused "willful and malicious injury."

When a debt is the result of "willful and malicious injury by the debtor to another entity or to the property of another entity," the debt is nondischargeable. 11 U.S.C. § 523(a)(6). The definition of "willful and malicious injury" under § 523(a)(6) is governed by federal law. *In re Baldwin*, 249 F.3d 912, 917 (9th Cir. 2001); *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

To establish the nondischargeability of a debt under 11 U.S.C. § 523(a)(6), a creditor must prove both willfulness and maliciousness. *In re Ormsby*, 591 F.3d at 1206. Ninth Circuit courts separately analyze the "willful" and "malicious" elements, but many elements overlap. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002); *In re Barboza*, 545 F.3d at 711.

Section 523(a)(6)'s willful injury requirement is met when the debtor has the subjective motive to inflict injury or when the debtor believes or knows that injury

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 30

is substantially certain to result from his own conduct. *In re Ormsby*, 591 F.3d at 1206 ("debtor is charged with the knowledge of the natural consequences of his actions"); *see also In re Su*, 290 F.3d at 1146 n.6 ("[T]he bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."); *In re Jercich*, 238 F.3d at 1208 (employer's withholding of employee's wages and use of same for personal benefit constituted "willful injury" under 523(a)(6)).

The court may infer intent "from the totality of the circumstances and the conduct of the person accused." *In re Ormsby*, 591 F.3d at 1206. The court need not "take the debtor's word for his state of mind." *Su*, 290 F.3d at 1146, n.6. "[S]ubjective intent may be gleaned from objective factors." *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 741 (9th Cir. B.A.P. 2001).[11] In other words, "[g]iven that a debtor is unlikely to admit that he or she was substantially certain that the injury in question would result from his or her acts, such understanding can be established through circumstantial evidence." *Harr v. Harr (In re Harr)*, 2000 WL 620799, at *6 (Bankr. S.D. Ohio Mar. 24, 2000) (citations omitted).

In this case, the State Court's findings related to the Youngs' conduct reveal the Youngs knew that injury was substantially certain as a result of their secretly

---

[11] Reviewing courts defer to the trial court's credibility findings because it is the trial court's purview to judge the credibility of witnesses and evidence. *E.M. Chen & Asssociates, Inc. v. Lu Island Dev., Inc.*, 145 F.3d 1337 (9th Cir. 1998).

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 31

taking, keeping, and spending the Coles' money. The State Court findings include evidence that the Youngs' believed or knew that injury was substantially certain to result from their conduct such as:

- Mr. Young secretly increased the gift letter amount after he discovered the amount of money the Coles had in the Old West bank accounts; (FF 62)
- Mr. Young secretly:
  - provided his personal bank account number as the destination for the wire transfers (FF 72; 75);
  - intercepted the email from Old West Bank (FF 79-80);
  - affixed Ms. Cole's signature and hid the first page of the two wire transfer documents from her (FF 198; 199);
- When the Coles demanded the return of their money, the Youngs engaged in multiple "extraordinarily manipulative" and aggressive tactics against Ms. Young's elderly parents (FF 103-118);
- The Youngs spent the Coles money on stock trades, recreational vehicles and paying their personal expenses, with no apparent ability to repay the Coles. (FF 98; 128; 129; 133; 147; 150; 173).

The State Court's findings, based on the totality of the circumstances, establishes the Youngs' conduct caused willful injury to the Coles as defined under 11 U.S.C. §523(a)(6).

The second prong of 11 U.S.C. § 523(a)(6) requires analyzing whether the debt was the result of a malicious injury. A debt arises from a malicious injury when the conduct was: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Chunchai Yu,* No. 6:15-AP-01153-SC, 2016 WL 4261655, at *2 (B.A.P. 9th Cir. Aug. 11, 2016), *aff'd,* 694 F. App'x 542 (9th Cir. 2017). "This four-part definition does not require a showing of biblical malice, i.e., personal hatred, spite, or ill-

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 32

will." *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997). A court applying the malice test "must take into consideration a policy that favors the victims of fraud over the perpetrators." *Id.*, citing *In re Britton*, 950 F.2d 602, 606 (9th Cir.1991).

All four of the requirements for finding a malicious injury under section 523(a)(6) are supported by the State Court's findings and conclusions. The first two elements require proof of a wrongful act, done intentionally. The State Court's findings demonstrate that the Youngs acted intentionally and wrongfully. The State Court found that:

- Mr. Young secretly:
  - o increased the gift letter amount after he discovered the amount of money the Coles had in the Old West bank accounts; (FF 62)
  - o provided his personal bank account number as the destination for the wire transfers (FF 72; 75);
  - o intercepted the email from Old West Bank (FF 79-80);
  - o affixed Ms. Cole's signature and hid the first page of the two wire transfer documents from her (FF 198; 199).

Mr. Young undertook several deceptive and secretive acts to obtain the Coles' money. His conduct reveals that he knew his taking possession of the Coles' money was wrongful and thus he attempted to hide what he had done. The first two prongs of the malice test are met.

The third prong of the malice test is a determination of whether the wrongful act causes injury. This element's analysis is substantially similar to the analysis under the "intentional" element of 11 U.S.C. § 523(a)(6). The State Court findings

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 33

support that the Youngs knew that by taking possession of all the Coles' money that was in Old West Bank, the Coles' were substantially certain to be injured. The Youngs are charged with knowledge of the natural consequences of their actions. The State Court findings support that this factor of the malice test is met.

The final prong of the malice test requires analysis of whether the act was done without just cause or excuse. At trial, the Youngs attempted to provide excuses or explanations for why the conversion was justified. For example, Ms. Young admitted the Balance Transfer of $119,718.04 was not a gift, she "testified that Ms. Cole allowed the transfer so the Youngs could pay for any of Mr. and Ms. Cole's needs or wants. Ms. Young testified to a pair of gloves that she had purchased for Mr. Cole with the money." (FF 170) Mr. Young characterized his account number on the transfer documents as a "mix-up." (FF 82) When Mr. Young "was asked why he did not transfer the [Balance Transfer] $119,718.04 to Ms. Cole when he discovered the mistake, Mr. Young testified that he was busy." (FF 171) Both Mr. and Ms. Young tried to blame Ms. Cole. They each testified that Ms. Cole was "a narcissist and that her short-term memory causes her to forget things within hours." (FF 174)

The State Court found that both Mr. and Ms. Young's attempts to rationalize or justify their taking of the Coles' money was "not credible... often contradictory, evasive, and argumentative;" (FF 186) and "implausible and conflicting." (FF 196)

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 34

As such, the Youngs lacked just cause or excuse to accept, retain and spend the Coles' money.

In sum, the State Court's findings support all four elements of "malice" as required under 11 U.S.C. § 523(a)(6). The State Court's findings establish that the Youngs committed wrongful acts, done intentionally, which necessarily caused the Coles injury, and the Youngs lacked just cause or excuse for their conduct.

### 5. THE COLE'S SUMMARY JUDGMENT MOTION MUST BE GRANTED.

In conclusion, because the State Court's findings reveal the Youngs' conduct constituted three independent bases for their nondischargeability action: (i) larceny under 11 U.S.C. § 523(a)(4); (ii) embezzlement under 11 U.S.C. § 523(a)(4); and (iii) willful and malicious injury under 11 U.S.C. § 523(a)(6), the Young's debt to the Coles is nondischargeable. The Coles' motion for summary judgment is granted.

### 6. THE YOUNGS' CROSS MOTION FOR SUMMARY JUDGMENT MUST BE DENIED.

The Youngs filed numerous pro se pleadings containing a variety of contentions in support of their cross-motion for summary judgment.[12] However,

---

[12] Generally, pro se pleadings are entitled to liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.2004). While a liberal construction may require "active interpretation," *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir.1985), creating claims or making legal arguments for a pro se litigant is well beyond the scope of the court's duties. *See Crawford v. Crestar Foods*, 2000 WL 377349 (6th Cir.2000) (*citing Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)). "To do so would not only strain judicial

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 35

the Youngs' arguments are nonsensical, and the Court will not expend judicial resources addressing each argument and teaching the Youngs the applicable body of law. Instead, the Court will address two examples that are illustrative of the arguments the Youngs advance.

First, the Youngs argue that they are entitled to summary judgment because no evidence exists that the Coles have "an enforceable claim" against the Youngs:

> Under RCW 64.04 and basic Washington contract principles, Plaintiffs have no written real-property, loan, trust, escrow or entrustment rights against Defendants, so Plaintiffs hold no enforceable claim under 11 U.S.C. § 502(b)(1).

(Adv. ECF No. 36 at p. 7)[13] As a result, the Youngs argue, the payments and assets the State Court ordered to be transferred to the Coles are "exempt" and not properly characterized as a "debt."

A state court judgment, whether for punitive or compensatory damages, "clearly represents a debt within the meaning of the Bankruptcy Code." *In re Roussos*, 251 B.R. 86, 94 (B.A.P. 9th Cir. 2000), aff'd, 33 F. App'x 365 (9th Cir. 2002). The Code defines "debt" as "liability on a claim," 11 U.S.C. § 101(12), and a "claim" as a "right to payment, whether or not such right is reduced to

---

resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the [trial] court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett* at 1278 (*citing Gordon v. Leeke*, 574 F.2d 1147, 1151, cert. denied, 439 U.S. 970 (1978)). In other words, the Court has "no obligation to act as counsel or paralegal" to the Youngs. *See Pliler v. Ford*, 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004).
[13] See also Adv. ECF No. 36 at pp. 16-18.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 36

judgment." 11 U.S.C. § 101(5)(A). See also *Cohen v. de la Cruz*, 523 U.S. 213 (1998) ("any debt" refers to the "full liability" required to make the creditor whole). Simply put, no cognizable legal or factual dispute exists that the State Court's findings, conclusions and order established the Youngs owe a debt to the Coles.

Second, the Youngs argue that once the Property Purchase and the Balance Transfer wires were deposited into Mr. Young's account, the funds legally belonged to him:

> Under RCW 62A.4A-406, when Bank of America accepted and credited the payment orders on October 16, 2023, Article 4A treated Linda [Cole] as having paid Defendants; from that moment, the wired funds in Defendants' accounts were Defendants' property, not Plaintiff's property.

(Adv. ECF No. 36 at p. 32.)

Washington has adopted Article 4A of the UCC ("Article 4A"), which addresses "wholesale wire transfer[s]" from financial institutions such as banks. *See* Wash. Rev. Code 62A.4A-102. Article 4A outlines the rights and obligations of banks and their customers in cases of unauthorized funds transfers. See RCW 62A.4A-204. Generally, under Article 4A, banks are liable to refund unauthorized payment orders unless certain circumstances exist. See RCW 62A.4A-202. In other words, Article 4A governs a bank's liability to a customer for unauthorized transfers.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 37

Article 4A is not applicable to this case. The bank's liability is not at issue. Instead, this case is about the Youngs' attempt to discharge a debt incurred after Mr. Young deceived Ms. Cole into signing a gift letter, secretly increased the downpayment amount by over $62,000, and surreptitiously inserted his own personal bank account as the recipient of the wire transfers. Contrary to the Youngs' argument, Article 4A did not convert legal ownership of the Coles' money into the Youngs' money upon receipt into Mr. Young's account. Article 4A is irrelevant to the Coles' claim.

In sum, the Youngs' arguments fail to provide a basis for the relief they request.

## 7. CONCLUSION

Application of the doctrine of collateral estoppel is appropriate in this case. The State Court's detailed findings establish that the Youngs' conduct meets three separate statutory exceptions under 11 U.S.C. § 523(a) to discharge a debt in a bankruptcy case: larceny, embezzlement and willful and malicious injury. Because no material issue of fact exists, the Court grants the Coles' motion for summary judgment.

The Youngs' summary judgment motion is based on no cognizable legal arguments and thus must be denied.

## 8. ORDER

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 38

Based on the foregoing, it is ORDERED:

1. Plaintiffs' Motion for Summary Judgment (ECF 9) is **GRANTED**;

2. Defendants' Motion for Summary Judgment (ECF No.17) is **DENIED**;

3. Defendants' "Omnibus Motion in Limine" (ECF No. 16) is **MOOT**.[14]

///End of Order///

---

[14] The Youngs moved to limit the evidence introduced at trial. Since this summary judgment order eliminates the need for trial, the motion in limine is moot.

**MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT** - Page 39

# NOTICE OF APPEAL
# EXHIBIT - B

# 25-80038 DOC 50

# ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

**So Ordered.**

**Dated: February 12th, 2026**



Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE:<br><br>ERIC ROSS YOUNG and SUSAN LINETTE YOUNG,<br><br><div align="right">Debtors.</div> | Case No. 25-01029-FPC |
| TED COLE and LINDA COLE,<br><br><div align="right">Plaintiffs,</div><br>v.<br><br>ERIC ROSS YOUNG and SUSAN LINETTE YOUNG,<br><br><div align="right">Defendants.</div> | Adversary No. 25-80038-FPC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION** |

THIS MATTER came before the Court on pro se Defendant Debtors Eric and Susan Young's motion for reconsideration. (Adv. ECF No. 46). The Youngs seek reconsideration of this Court's memorandum opinion and order that granted the Coles' motion for summary judgment and denied the Youngs' cross-motion for summary judgment. (Adv. ECF No. 44)

## A. BACKGROUND

Prior to the Youngs' petitioning for bankruptcy, the Coles and the Youngs litigated issues similar to the issues presented in this adversary case, in a four-day

**ORDER DENYING RECONSIDERATION** - Page 1

bench trial in Spokane County Superior Court, Case No. 23-2-04734-32 ("the State Court"). After the trial, the State Court issued 213 detailed findings of fact and conclusions of law and concluded the Youngs had converted the Coles money. The State Court ordered the Youngs to pay the Coles certain sums and provide title to a recreational vehicle.

In deciding the summary judgment motions in this adversary case, the Court found collateral estoppel applied because the issues presented in this adversary case were fully adjudicated in the State Court trial. The Court analyzed the 11 U.S.C. § 523(a) nondischargeability standards and applied the State Court's factual findings and legal conclusions to those legal standards. (Adv. ECF No. 44) This Court concluded that the debt the Youngs owe the Coles is nondischargeable in bankruptcy because the Youngs' conduct met the definition of larceny, embezzlement and willful, malicious injury. 11 U.S.C. § 523(a)(4), (6).

## B.    <u>ANALYSIS</u>

A motion for reconsideration is treated as a motion to alter or amend a judgment under Rule 59(e), made applicable by Rule 9023, if it is filed within fourteen days of entry of judgment. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 898-99 (9th Cir. 2001).[1] "[C]ourts have "considerable

---

[1] Bankruptcy Rule 9006(b)(2) prohibits the Court from extending the time to file a reconsideration motion. The Youngs' reconsideration motion was filed on the 15th day, but the Court agreed to consider the motion because the Youngs introduced evidence establishing that

**ORDER DENYING RECONSIDERATION** - Page 2

discretion" in deciding Rule 59(e) motions." *Kaufmann v. Kijakazi,* 32 F.4th 843, 850 (9th Cir. 2022).

Rule 59(e) provides an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprise, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000). Motions for reconsideration should not be granted absent "highly unusual circumstances," such as: (1) the court is presented with newly discovered evidence; (2) the court committed clear error or made an initial decision that was manifestly unjust; or (3) an intervening change in controlling law applies. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880 (9th Cir. 2009); *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001).

A Rule 59(e) motion may not be used to relitigate previously considered issues. *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008).

The Youngs argue that relief under CR 59(e) is warranted because this Court committed several manifest errors of law. However, the five errors alleged by the

---

they made several attempts to timely file the motion. The Youngs' evidence reveals they encountered significant technical issues with the Court's electronic filing system. Moreover, the Youngs did not file a notice of appeal within the 14-day window provided by Bankruptcy Rule 8002(a), nor did they present any evidence that they tried to do so. In the event they file an appeal, the appellate court will decide if the appeal was timely. *See United States v. LaValley,* 925 F.2d 1471 (9th Cir. 1991).

**ORDER DENYING RECONSIDERATION** - Page 3

Youngs simply repeat the same arguments they presented related to the summary judgment motions and thus do not warrant reconsideration. Specifically, the Youngs repeat these arguments:

(1) the State Court's findings and conclusions were "nonfinal" and therefore this Court may not adopt or rely upon the State Court findings;

(2) Regulation J and UCC Article 4A require this Court to find that the bank wire transfers legally transformed the Coles' money into the Youngs' money;

(3) the State Court's finding that the Coles did not prove common law fraud means this Court cannot conclude the Youngs behaved fraudulently under § 523(a) standards;[2]

(4) the State Court's finding that Eric Young affixed Ms. Cole's signature to the bank transfers directing her money to be deposited into his account, was contrary to the evidence admitted at trial; and

(5) the State Court's conclusion the Youngs committed conversion was contrary to the evidence admitted at trial.

None of the Youngs' arguments present newly discovered evidence, reveal clear error, or cite to an intervening change in the controlling law. Instead, the Youngs' reconsideration motion simply rehashes the same arguments made on summary judgment. As a result, the Youngs' reconsideration motion must be denied.

**ORDER**

---

[2] This argument contradicts the Youngs' argument that the State Court's findings are "nonfinal," and thus not binding, and the Youngs provide no explanation for the contradiction.

**ORDER DENYING RECONSIDERATION** - Page 4

IT IS ORDERED that the Youngs' motion for reconsideration (Adv. ECF No. 46) is **DENIED.**

///End of Order///

**ORDER DENYING RECONSIDERATION** - Page 5